## Case No. 15,913.

UNITED STATES v. OGDEN.

[See Cases Nos. 16,341a and 16,342b.]

---

## Case No. 15,914.

UNITED STATES v. The OHIO.

[Newb. 409.] [1]

District Court, E. D. Louisiana. Nov., 1849.

SLAVERY—IMPORTATION—PRESUMPTION OF FREEDOM—FORFEITURE.

1. The United States district attorney for this district, filed a libel in rem against the bark Ohio, to have her declared forfeited, for having brought into the United States a colored person from a foreign port or place, in violation of the 1st section of the act of congress of the 20th April, 1818 (3 Stat. 450).

2. The provisions of this act were not intended to apply to a case where a colored person, born and reared within the United States, sails to a foreign port or place on board of an American ship and returns to a port of the United States.

3. And where it appears from evidence, that the negro boy came on board of the vessel in the port of Baltimore in the capacity of a servant, and that he had for several years resided in New Jersey or New York, in the family of the master of the ship, the presumption is that he was free, notwithstanding the declaration of the custom officer, that the master claimed him as his slave.

4. In no event can this libel in rem for a forfeiture be sustained, since it does not appear from evidence, that the master, even if he brought the colored boy in question from a foreign port or place, did so on board this particular vessel.

In admiralty.

Mr. Durant, for the United States.
Mr. Bradford, for respondent.

McCALEB, District Judge. This action is brought against the vessel to have her declared forfeited in consequence, as it is alleged, of her having brought into this port a colored person from a foreign port or place.

It is shown by two officers of the customhouse in this city, that when they went on board the vessel shortly after her arrival in port, that the master declared that the negro boy on board was his slave. This declaration unexplained would doubtless raise a strong presumption against the master, as to his intention of holding the negro in involuntary servitude. But all the evidence must be taken together. Two of the crew of the vessel were examined, and testified that the boy came on board the vessel at Baltimore as a servant, and had continued on board in that capacity during the voyage to several foreign ports and back to this port. Another witness testifies that he knew the boy as long ago as 1842 in the city of New York, where he was then employed as a servant in the family of the master. He also testifies that he was the son of a free woman in Rio Janeiro, who was herself employed in the family of the American consul at that port.

Without taking into consideration the testimony of the master or his wife, which was received subject to objection upon the ground of interest, I am unable to discover any violation of law so far as this vessel is concerned. It is not shown that this master while in command of this vessel, brought the negro boy from a foreign port or place. It is clearly shown, on the contrary, that the boy came on board in the capacity of a servant before the vessel sailed from the port of Baltimore. It is also shown that he was several years before that time residing

1 [Reported by John S. Newberry, Esq.]

in New Jersey or New York in the family of the master. The fair presumption on the mind of the court, notwithstanding the declaration of the custom-house officer, that the master claimed him as his slave, is. that he was free before he ever sailed on the last voyage of this vessel. There is nothing in the acts of congress to prohibit the employment of colored people on board of an American vessel, and in this case, the master, at the earliest opportunity, gave bond to take this negro boy away with the vessel according to the requisitions of the state law.

Let us suppose that this boy was a slave when he left Baltimore; still, in the absence of all proof that he had been imported from a foreign port or place on board of this vessel, there would be no ground for forfeiture. If, by this master he were really imported in another vessel, there is no principle in law or justice which would justify the forfeiture of the property of the present innocent owners. Even regarding the boy as a slave when he sailed from Baltimore, the case before the court cannot be distinguished from that of U. S. v. The Garonne, 11 Pet. [36 U. S.] 73.

In that case certain persons. who were slaves in Louisiana, were by their owners taken to France as servants, and after some time, were by their own consent, sent back to New Orleans. The ships in which these persons were passengers, were libeled for alleged breaches of the act of congress of April 20th, 1818, prohibiting the importation of slaves into the United States. It was held by the supreme court of the United States. that the provisions of the act of congress do not apply to such cases. The object of the law was to put an end to the slave trade. and to prevent the introduction of slaves from foreign countries. The language of the statute cannot be properly applied to persons of color who were domiciled in the United States. and who were brought back to the United States—to their place of residence—after a temporary absence.

In view of the law and evidence of this case. I am of opinion that no decree of forfeiture can be given against this vessel.